Cohen et ux. *v.* Perrino et ux., Appellants.

Argued December 3, 1946. Before MAXEY, C. J.,
LINN, STERN, PATTERSON, STEARNE and JONES, JJ.

*Joseph Alessandroni,* for appellants.

*Samuel Kravitz,* for appellees.

Opinion by Mr. Justice Allen M. Stearne, January 10, 1947:

This litigation developed from a petty neighbor dispute between adjoining real estate owners. From it has emerged an important legal principle, affecting real estate enjoyment throughout the Commonwealth. The question is: Where a landowner erects a structure on his own land which obstructs the light, air, and view of an adjoining owner, thereby annoying the adjoining owner, may legal or equitable relief be had by the adjoining owner if the landowner's motive in erecting such structure was purely malicious?

Plaintiffs and defendants are adjoining property owners. The east wall of plaintiffs' house, erected on the property line, extends a number of feet beyond the rear of defendants' house. Two windows in plaintiffs' wall overlook the back yard of defendants' dwelling. One window is on the first floor and the other is above it on the second floor. The panes in the windows are of frosted glass. Defendants erected a brick wall, entirely upon their own land, one and one-half inches from plaintiffs' wall. The wall is 9 inches thick, 12 feet long and 10 feet high. It completely obstructs and blocks off plaintiffs' first floor window.

Plaintiffs filed a bill in equity seeking to compel the removal of the wall. They maintained that the shutting out of light and air impaired the use and value of their property and jeopardized their health. It was contended that the structure served no useful purpose and was erected for the sole purpose of harassing and annoying plaintiffs and created a nuisance. Defendants denied that it was a "spite" structure, but was erected for a useful and beneficial purpose to defendants, viz: to permit the hanging of a clothes line in the yard and as part of a proposed garage.

Judge Crumlish, the learned chancellor, heard the testimony with patience. He inspected the premises. The adjudication reflects careful study. He found that the basic controversy resulted from defendants' objection

to plaintiffs' downstairs window overlooking defendants' back yard; that the wall was of no reasonable or beneficial use to defendants and that its only purpose was to "block off" plaintiffs' window. He concluded that defendants were motivated by malice and that the structure was erected merely to annoy plaintiffs and diminish the value of their property. He ordered the removal of the wall. The appeal followed.

Plaintiffs' wall is on the division line. The windows in the wall gave them no easement of light and air: *Haverstick v. Sipe,* 33 Pa. 368; *Beckershoff v. Bomba,* 112 Pa. Superior Ct. 294, 298, 170 A. 449. This Court has held that while a property owner has no right of action against a neighbor constructing or opening windows or doors overlooking his premises so as to interfere with his privacy, his remedy is to build on his own land opposite to the offending windows so as to obstruct the view: *Haverstick v. Sipe,* supra; *Beckershoff v. Bomba,* supra. See also: *Shell v. Kemmerer,* 13 Phila. 502. A property owner is entitled to build a wall entirely upon his own ground, or to build a *party wall,* that obstructs and closes the windows of an adjoining owner: *Neilson v. Hummel,* 280 Pa. 483, 124 A. 642; *Phila. S. & S. Mfg. Co. v. Silberman,* 351 Pa. 154, 40 A.2d 395.

We come then to the *motive* for the erection of the wall in question. The learned chancellor found that while defendants' alleged chief grievance was that the windows interfered with their right to privacy, the real purpose was, with malicious intent, solely to annoy plaintiffs and also that such structure served no useful or beneficial purpose. The legal question is therefore presented: where a landowner has a legal right to erect a structure upon his own land, which may diminish the value of the adjoining owner's property does the fact that the erection was actuated by malice or to annoy render it unlawful?

There is a conflict of authority as to whether a structure may be abated where it serves no useful pur-

pose and the dominant reason for erecting it is to annoy the adjoining landowner or injure him in his enjoyment of his premises.

It is the general rule of the common law, that the *motive* for doing a lawful act will not be inquired into by the court. The motive is immaterial. In some jurisdictions, however, malevolence furnishes a ground for legal or equitable relief where the malice or spite is the prime and dominant motive: See C.J.S. vol. 2, §50 and §51, p. 44; American Jurisprudence, vol. 1, §52, p. 535 and vol. 22, §43, p. 546; annotation in 133 A.L.R., p. 691 et seq.

The courts which adhere to the common law rule and hold that motive is immaterial are: United States—*Camfield v. United States,* 167 U.S. 518, 42 L. ed. 260, 17 S. Ct. 864; California—*Biber v. O'Brien,* 138 Cal. App. 353, 32 P. (2d) 425; Illinois—*Honsel v. Conant,* 12 Ill App. 259; Indiana—*Giller v. West,* 162 Ind. 17, 69 N.E. 548; Kansas—*Triplett v. Jackson,* 5 Kan. App. 777, 48 P. 931; Kentucky—*Saddler v. Alexander,* 21 Ky. L. Rep. 1835, 56 S.W. 518; Maine—*Lord v. Langdon,* 91 Me. 221, 39 A. 552; Massachusetts—*Rideout v. Knox,* 148 Mass. 368, 19 N.E. 390; Montana—*Bordeaux v. Greene,* 22 Mont. 254, 56 P. 218; New York—*Levy v. Samuel Brothers,* 4 Misc. 48, 23 N.Y.S. 825; Ohio—*Letts v. Kessler,* 54 Ohio St. 73, 42 N.E. 765; Washington—*Karasek v. Peier,* 22 Wash. 419, 61 P. 33; West Virginia—*Koblegard v. Hale,* 60 W. Va. 37, 53 S.E. 793; and Wisconsin—*Metzger v. Hochrein,* 107 Wis. 267, 83 N.W. 308. Those courts which hold to the contrary are: Alabama—*Norton v. Randolph,* 176 Ala. 381, 58 So. 283; Georgia—*Hornsby v. Smith,* 191 Ga. 491, 13 S.E. (2d) 20; Louisiana—*Parker v. Harvey,* (1935 La. App.), 164 So. 507; Michigan—*Burke v. Smith,* 69 Mich. 380, 37 N.W. 838; Nebraska—*Dunbar v. O'Brien,* 117 Neb. 245, 220 N.W. 278; New Hampshire—*Horan v. Byrnes,* 72 N.H. 93, 54 A. 945; North Carolina—*Barger v. Barringer,* 151 N.C. 433, 66 S.E. 439; Oklahoma—*Hibbard v. Halliday,* 58 Okla. 244, 158 P. 1158; and South Dakota—*Racich v.*

*Mastrovich,* 65 S.D. 321, 273 N.W. 660. Restatement, Torts, vol. 4, §829, adopts the exception to the general rule. It states: ". . . an intentional invasion of another's interest in the use and enjoyment of land is unreasonable and the actor is liable when the harm is substantial and his conduct is (a) inspired solely by hostility and a desire to cause harm to the other; or (b) contrary to common standards of decency."

The reason for the principle applied by the court in disregarding the *motive* for erecting a structure upon an owner's land was well stated by BURKET, J., in *Letts v. Kessler,* 54 Ohio St. 73, 42 N.E. 765, 40 L.R.A. 177: ". . . To permit a man to cause a certain injurious effect upon the premises of his neighbor by the erection of a structure on his own premises if such structure is beneficial or ornamental, and to prohibit him from causing the same effect in case the structure is neither beneficial nor ornamental, but erected from motives of pure malice, is not protecting a legal right, but is controlling his moral conduct. In this state a man is free to direct his moral conduct as he pleases, in so far as he is not restrained by statute. But it is said that such acts are offensive to the principles of equity. Not so. There is no conflict between law and equity in our practice, and what a man may lawfully do cannot be prohibited as inequitable. It may be immoral, and shock our notions of fairness, but what the law permits, equity tolerates. It would be much more inequitable and intolerable to allow a man's neighbors to question his motives every time that he should undertake to erect a structure upon his own premises, and drag him before a court of equity to ascertain whether he is about to erect the structure for ornament or profit, or through motives of unmixed malice."

The contrary view is expressed in *Hornby v. Smith,* 191 Ga. 491, 13 S. E. (2d) 20: ". . . malicious use of property resulting in injury to another is never a 'lawful use', but is in every case unlawful. The right to

the use of property is therefore a qualified rather than absolute right. When one acting solely from malevolent motives does injury to his neighbor, to call such conduct the exercise of an absolute legal right is a perversion of terms. We know of no . . . rule of law . . . that confers upon an individual a right to maliciously injure another, regardless of what method may be employed to inflict such injury. On the other hand, every one is entitled to the protection of the law against invasions of his rights by others. The use of one's own property for the sole purpose of injuring another is not a right that a good citizen would desire nor one, that a bad citizen should have."

No case has been cited, and our research has revealed none, where this Court has decided the question thus propounded. We have decided, however, on many occasions and in varying circumstances, that a lawful act is not actionable though it proceed from a malicious motive. In the early case of *Jenkins v. Fowler*, 24 Pa. 308, Justice JEREMIAH S. BLACK, said, p. 310: ". . . we cannot take cognisance of mere feelings and motives. These considerations may and do often aggrevate the character of wrongs. Malicious motives make a bad act worse; but they cannot make that wrong which, in its own essence, is lawful. When a creditor who has a just debt brings a suit or issues execution, though he does it out of pure enmity to the debtor, he is safe. In slander, if the defendant proves the words spoken to be true, his intention to injure the plaintiff by proclaiming his infamy, will not defeat the justification. One who prosecutes another for a crime, need not show in an action for malicious prosecution that he was actuated by correct feelings, if he can prove that there was good reason to believe the charge well founded. In short, any transaction which would be lawful and proper if the parties were friends, cannot be made the foundation of an action merely because they happened to be enemies. As long as a man keeps himself within the law by doing no *act* which

violates it, we must leave his motives to Him who searches the heart." In that case adjoining owners fenced in an unopened road, contrary to law. Defendant tore down his part of the fence which exposed plaintiff's field and permitted crops to be destroyed by cattle let in upon it. *Jenkins v. Fowler,* supra, is the leading case in this Commonwealth and has been frequently cited with approval and as late as 1941 in *Stofflett v. Kress,* 342 Pa. 332, 335, 21 A.2d 31. Thus: In a *criminal case,* if there exists probable cause, the motive of the prosecution is immaterial: *Allison's and Miller's Appeal,* 86 Pa. Superior Ct. 451; in a bill to set aside a *trust deed;* the motive was not considered: *Beirne v. Cont. Equitable T. & Tr. Co.,* 307 Pa. 570, 577, 161 A. 721, and in an *orphans' court accounting* questioning the bona fides of a divorce: *Vetter's Estate,* 308 Pa. 447, 453, 162 A. 303; in a *labor dispute* where an injunction was set aside: *Kirmse et al. v. Adler,* 311 Pa. 78, 86, 166 A. 566; in *judgment executions*: *Rosenblum v. Rosenblum et al.,* 320 Pa. 103, 108, 181 A. 583; *Stofflet v. Kress,* supra.

Defendants being lawfully entitled to erect the wall upon their own land, we will not inquire into their motive for so doing. Nor is it necessary to consider cases dealing with statutory regulations of the use of land or dealing with nuisance actual or threatened.

We observe that the wall in question is erected one and a half inches from plaintiffs' wall, and it is alleged that this condition permits an accumulation of rain water and snow which may seep into plaintiffs' cellar to his damage. A somewhat similar situation arose in *Phila. S. & S. Mfg. Co. v. Silberman,* 351 Pa. 154, 40 A. 2d 395. The chancellor in that case required the defendants to seal the space at the top and sides, and no exception was taken to the order. That case, however, related to a *party wall.*

The decree is reversed and the bill dismissed. Each side to pay its own costs.